[No. 23329. Department One. December 21, 1931.]

CHARLES H. DISNEY, *Respondent*, v. NATIONAL UNION INDEMNITY COMPANY, *Appellant*.[1]

*F. A. Latcham* and *Whittemore & Truscott,* for appellant.

*G. C. Nolte,* for respondent.

MITCHELL, J.—The appellant, National Union Indemnity Company, for a valuable consideration, delivered to respondent, Charles H. Disney, its policy insuring him against loss and expense resulting from claims upon him for damages on account of bodily injury to any person or persons accidentally suffered or claimed to have been suffered while the policy was in force by reason of the ownership, maintenance or use of a certain automobile described in the policy.

The assured loaned the automobile to a party, including his father and mother, H. H. and Elizabeth Disney, for a day's pleasure trip. The steering gear of the automobile was defective, which made it unsafe for use by one having no knowledge of the defect. The assured neglected to notify the parties to whom it was

[1]Reported in 6 P. (2d) 359.

loaned of its defect, and during the trip it became unmanageable, ran off the highway and injured Elizabeth Disney.

She and her husband brought an action against Charles H. Disney to recover on account of the injuries sustained by her. He tendered the defense of that action to the insurance company, under and according to the terms of the policy. The insurance company accepted the burden and conduct of the defense, and through its attorneys, upon information supplied by adjusters for the insurance company, prepared the answer in that case and represented the defendant at the trial. The jury disagreed at the trial.

The plaintiffs in that action then amended their complaint, and when the defendant was called upon to make answer thereto, he declined to reassert the allegation of his answer to the original complaint to the effect that the automobile was in good repair and that his parents were familiar with its condition; because, as he stated, it was a fact that the automobile did have defective steering gear and his parents did not know it, and that he would not verify an answer to the contrary. In this respect, and in explanation of his signing the answer to the original complaint in that case, he testified in the trial of the present case that, upon signing that answer, he merely glanced at it, did not understand what it contained, and that at the trial in that case, which resulted in a mistrial, he was not able to tell what the answer contained. His testimony at the time of that mistrial was that the automobile was defective and that his parents were not aware of it.

Because of his so testifying, and of his refusal to make answer as before, and because of other things, the details of which are not important and with reference to which the assured testified in the present case,

the insurance company withdrew from the management of the defense of the assured in that case and gave him written notice to that effect; stating that it did so upon the ground of collusion and failure on the part of the assured to cooperate in the defense of the action against him, as required by the terms of the insurance policy.

Later, that suit was tried, and resulted in a verdict and judgment against the defendant therein in the sum of $3,960.70, upon which execution issued against the property of the judgment debtor. Demand was then made upon the insurance company to pay that judgment; and upon its refusal to do so, this action was brought upon the policy of insurance.

The only defense upon the merits interposed in the trial court was that, in the action in which judgment had been obtained against the plaintiff in this action, he refused to cooperate with the defendant in this case, as provided by the terms of the insurance contract, and collusively and fraudulently assisted and cooperated with plaintiffs in that suit in obtaining judgment against him. This affirmative defense was denied. Upon the trial, there was a verdict and judgment for the plaintiff. The defendant has appealed.

The main contention in the case on the appeal rests upon the denial of appellant's motions for a directed verdict and for judgment notwithstanding the verdict. There were facts and circumstances brought out on the trial, some of which have been mentioned, that tended to show and would have justified the jury in finding, according to the allegations of the affirmative answer, that the respondent colluded with his parents in their successful suit against him. But respondent's testimony with reference to those things, together with other facts and circumstances, were suf-

ficient, the jury believing them, to fully meet that charge. This issue was one of fact, upon which the evidence was decidedly conflicting and upon which the finding of the jury is controlling.

■ Error is assigned upon the use of the words, "I charge you that the mere fact that the plaintiff refused to sign an answer, as prepared by the insurance company's attorney," etc., in the commencement of one of the court's instructions to the jury. This, of course, had reference to the matter of an answer to the amended complaint in the suit against this respondent by his parents, and the contention is that the language complained of assumed a material fact, contrary to the testimony of the assured himself that "no answer was prepared." That is, that the language meant an answer "already" prepared which it is claimed was contrary to the testimony of the respondent.

The criticism is highly technical and, in our opinion, unfair to an ordinary and reasonable understanding of the respondent's testimony, brought out in cross-examination on behalf of the appellant, as follows:

"Q. Did you sign any pleading at all? A. No, sir. Q. Who questioned you about the amended complaint? A. You and the other lawyer, I don't know his name. I guess he was a lawyer. Q. The other gentleman, whoever it was. Did we tell you what the purpose of the meeting was? A. I knew when you were questioning me what it was for. Q. What was it for? A. You tried to get me to sign a statement that was not correct. Q. Did we have the statement there? A. You were making one out. Q. I told you I had my stenographer there, and Mr. York, and I wanted you to tell me the kind of an answer or pleading you were willing to sign in answer to the amended complaint of your mother's? . . . A. Well, I told you I would sign anything that was correct. Q. I did not have the answer prepared, did I? A. I don't know, your stenog-

rapher dictated something that you wrote down and you asked me if I would sign that and I said no. Q. Did I prepare an answer for you? A. I don't know, your stenographer read it to me and you asked me if I would sign it and I said no."

The language of the instruction, reasonably considered, may mean either an answer in the process of preparation by appellant's attorneys in consultation with the respondent, or an answer already prepared; and surely the jury could not have been misled nor appellant's right prejudiced by the language complained of in the instruction.

Further complaint and assignment of error is made on account of the refusal of the court to give a requested instruction. In our opinion, it contained an incorrect statement of law, under undisputed facts with reference to the subject matter to which the instruction related.

Affirmed.

TOLMAN, C. J., PARKER, HERMAN, and BEELER, JJ., concur.